## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHISN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY J. SINNOTT, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 20-cv-01917** |
| | ) | |
| v. | ) | **Judge Virginia M. Kendall** |
| | ) | |
| THE CITY OF CICERO, | ) | **Jury Trial Demanded** |
| JERRY CHLADA, JR., individually, | ) | |
| THOMAS BOYLE, individually, | ) | |
| LAWRENCE POLK, individually, | ) | |
| RODOLFO FLORES, individually, | ) | |
| MICHAL SKRABACZ, individually, and | ) | |
| VINCENT ACEVEZ, individually, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, ANTHONY SINNOTT ("SINNOTT"), by and through his attorneys, TRENT LAW FIRM, P.C., complaining against the Defendants in this matter, TOWN OF CICERO (hereinafter collectively "CICERO"), Police Superintendent Jerry Chlada, Jr. ("CHLADA"), Deputy Superintendent Thomas Boyle ("BOYLE"), Commander Lawrence Polk ("POLK"), Captain Rodolfo Flores ("FLORES"), Sergeant Michal Skrabacz ("SKRABACZ"), and Deputy Superintendent of Patrol Vincent Acevez ("ACEVEZ"), states as follows:

### NATURE OF THE ACTION

This is an action for injunctive relief and for damages against the defendants to enforce the Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*) ("Title VII"), a violation of 1983 Equal Protection – (Race Discrimination), and for state law causes of action.



## PARTIES

1.      Plaintiff SINNOTT is an adult, African American, male citizen who resides within the territorial jurisdiction of the District Court.

2.      CICERO is an Illinois Municipal Corporation and/or Township Corporation, with its principal place of business in Cicero, Cook County, Illinois.

3.      The Town of CICERO operates the Cicero Police Department.

4.      At all relative times, CICERO employed more than fifteen (15) employees and was Plaintiff's employer.

5.      CICERO, at all times relevant to this Complaint, operated within the territorial jurisdiction of the District Court.

## JURISDICTION

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, and its supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

7.      Jurisdiction is invoked pursuant to 42 U.S.C. § 1981 including 42 U.S.C. § 1981a(c)(2) (limits do not apply to back pay or front pay, which is awarded under 42 U.S.C. § 2000e5(g)(1)).

8.      All jurisdictional prerequisites to a lawsuit have been met to wit:

a.      On February 25, 2019, Plaintiff filed a charge of discrimination alleging discrimination based on race and retaliation which was perfected by the Illinois Department of Human Rights ("IDHR") and by a work sharing agreement between the Department and the Equal Employment Opportunity Commission ("EEOC") was cross-filed and perfected

at both agencies;

      b.        The charge was filed at the IDHR (*see* Exhibit A);

      c.        The charge was perfected by the IDHR and thus was perfected at both the IDHR and the EEOC (*see* Exhibit A);

      d.        The charge was assigned EEOC Charge No. 2019 CR 3121;

      e.        The charge pursuant to the work-sharing agreement between agencies was filed within 300 days of the date of the last act of discrimination, retaliation and harassment, which was and were on-going through the date Plaintiff's employment was terminated;

      f.        Plaintiff received a Right-to-Sue letter from the EEOC dated December 20, 2019 (*see* Exhibit B);

      g.        This lawsuit is being filed within 90 days of the date of receipt of the Right-to-Sue letter (*see* Exhibit B);

9.      Plaintiff is raising claims that all flow out of a common nucleus of common facts and parties.

## VENUE

10.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because:

      a.        Defendant CICERO, is a municipality in this court's jurisdictional district; and

      b.        all events or omissions giving rise to Plaintiff's claims occurred here in this jurisdictional district.

## FACTS

11.      Defendants are local governmental entities, are and were, at all times relevant, "employers" and/or "covered entities" within the meaning of Title VII of the Civil Rights Act of 1964.

12.     That SINNOTT began his police career in 2008 when he was hired by the Harvey Police Department on August 25.

13.     That SINNOTT served the community of Harvey for approximately nine years and obtained the civil service rank of Sergeant.

14.     That SINNOTT was one of the youngest patrol officers in the history of the Harvey Police Department to earn the civil service rank of patrol sergeant via state sanctioned testing.

15.     That SINNOTT was awarded multiple service awards, accommodations, lifesaving awards, shift awards and numerous community recognitions.

16.     That, in pertinent part, these awards included four lifesaving awards, a service award for participation in the Harvey Hostage Standoff, numerous shift of the month awards, a service award for aiding in the capture and arrest of four homicide suspects who were wanted in the State of Georgia, community service awards, and several mentions from Restoration Ministries.

17.     SINNOTT also obtained numerous training certifications to include, but not limited to, first line supervisor, hundreds of hours in patrol rifle tactics and training, leadership training, community policing objectives and tactics, gang enforcement, rapid deployment and response, mass casualty aid and response, active shooter, response and planning for bomb and explosive threats, tactical medicine and care under fire.

18.     On January 1, 2017, SINNOTT left the Harvey Police Department and continued his career with CICERO.

19.     CICERO hired SINNOTT on or about January 1, 2017 to work as a full-time, sworn police officer for the Town of Cicero Police Department.

20.     That upon information and belief, SINNOTT was the only African American male hired by CICERO since 2014.

21.     That upon information and belief, SINNOTT was the last police officer of African American descent that has been hired by CICERO.

22.     That during the course of his employment with CICERO, SINNOTT brought real world experience, seasoned investigative skills, and a comprehensive community policing outlook.

23.     That upon information and belief, CICERO'S administration is comprised predominantly of Caucasian males.

24.     BOYLE, Caucasian, is the Deputy Superintendent for CICERO.

25.     POLK, Caucasian, is a Commander for CICERO.

26.     FLORES, Hispanic, is a Captain for CICERO.

27.     SKRABACZ, Caucasian, is a Sergeant for CICERO.

28.     Commander Vincent Acevez ("ACEVEZ"), Caucasian, was a Commander who was then promoted Deputy Superintendent of Patrol.

29.     Sergeant Rowe ("ROWE"), African American, is a Sergeant with CICERO.

30.     That SINNOTT was assigned a defective radio with serial number #B4A00068 and a locator assigned to another officer.

31.     That SINNOTT was also assigned a battery serial #0215C00160 that did not function properly.

32.     That due to the defective radio, SINNOTT would have to constantly reference the dispatch center with a call of 10-97 which is a radio check for signal clarity over the main radio channel to make sure his two-way radio was functioning properly.

33.     That on numerous occasions, SINNOTT would get a call back of 10-1 meaning unable to copy or weak signal from the dispatchers and SINNOTT would then have to reset his radio.

34.     That after adjusting the radio, SINNOTT would attempt another 10-97 over the air until he received a 10-2 response meaning that his signal was good.

35.     That SINNOTT continuously had to perform these radio actions between approximately January 1, 2017 to June 11, 2018 and, upon information and belief, other non-African American officers did not have to perform these actions.

36.     That once the defective radio and battery were discovered, SINNOTT notified SKRABACZ during his first phase of field training.

37.     That due to the defective radio, SINNOTT would have to constantly reference the dispatch center with a call of 10-97 which is a radio check for signal clarity over the main radio channel to make sure his two-way radio was functioning properly.

38.     SINNOTT later explained that the battery SINNOTT was issued was defective and gave no audible signal indicating its charge status.

39.     The battery would die between 15 percent and 12 percent.

40.     SINNOTT was written up on April 27, 2018, as a result of being issued defective equipment by FLORES.

41.     That SINNOTT was hired with other officers to include, without limitation, Officer Smith, Caucasian, Officer Cuchna, Caucasian, Officer Jimenez, Hispanic, and Officer Bello, Hispanic, and these non-African American officers received properly functioning equipment.

42.     SINNOTT was forced to shave his face with a razor after advising CICERO that he couldn't.

43. As a result, SINNOTT had to obtain a written prescription to remedy his condition from a doctor to provide to CICERO.

44. That SINNOTT consulted with Dr. Manuel S. Mesirow, M.D. who issued a prescription and remedy for SINNOTT'S skin condition.

45. SINNOTT was subjected to hostile work environment as a result of his skin color.

46. That SINNOTT suffers from Pseudofolliculitis Barbae which is a common, chronic, inflammatory skin condition that occurs as a result of shaving and affects mainly men of African descent.

47. That SINNOTT advised CICERO that he is unable to shave with a razor due to his medical condition.

48. That CICERO forced SINNOTT to shave with a razor even after SINNOTT advised CICERO that he could not.

49. That SINNOTT was continually scrutinized and criticized by non-African American command staff.

50. That in December 2017, POLK would make comments to SINNOTT regarding his skin being dark and bumpy.

51. That POLK also compared the African American officer's skin tone to the color and texture of a brown paper bag during roll call in the early winter of 2018.

52. That ROWE was present and complained to the administration, including FLORES and BOYLE, about the comments that were made, and, upon information and belief, no disciplinary action was taken against POLK.

53. That SKRABACZ and FLORES constantly requested SINNOTT to shave his face after he submitted a prescription from his dermatologist and appropriate paperwork.

54.    That after notifying CICERO of his medical condition, SINNOTT was assigned to vehicles that were mechanically not safe to drive and had faulty electronics.

55.    That these vehicles needed suspension replacement, tire replacement, windshield replacement, electronic maintenance for the mobile computer systems, emergency equipment had intermittent faults and the vehicle had numerous service lights illuminated on the dashboard.

56.    SINNOTT was assigned marked patrol vehicle 318, which was not mechanically sound, nor did the electronics operate properly.

57.    Additionally, the vehicle GPS system had a general malfunction as it would not accurately depict the location of this vehicle.

58.    The vehicle should have been removed from active status for repair.

59.    All service lights were illuminated on the vehicle dashboard (traction control, service engine soon, abs light and airbag light), mobile computer system would turn off after approximately three minutes of idle time, emergency equipment had an intermittent short as the lights and sirens wouldn't always function when activated.

60.    SINNOTT was written up for incident 201800034994 and 201800034995 as a result of having to use defective equipment.

61.    SINNOTT was advised by SKRABACZ that the vehicle GPS system showed the patrol vehicle positioned at the Cicero Police Facility during the incident.

62.    SINNOTT advised that he was in fact not at the police facility for a few hours despite the vehicle's GPS indicating that he was.

63.    SKRABACZ then proceeded to accuse SINNOTT of tampering with the GPS system which is protected by multiple administrative passwords.

64.     SINNOTT has no knowledge of the inner workings of the system, nor did he tamper with the system.

65.     During this event, BOYLE stated that vehicle 318 was properly serviced and functioning as it should.

66.     That SINNOTT was then falsely accused of damaging a vehicle without a proper investigation being completed by POLK and BOYLE.

67.     There were small dents on the vehicle, which had been documented as previous damage to the unit.

68.     SINNOTT was ordered to submit a communication memo regarding the incident on May 9, 2018.

69.     SINNOTT advised of the stated information and gave his location of 1500 S. 54th Ave., Cicero, IL 60804.

70.     SINNOTT was later approached by SKRABACZ on May 10, 2018, who requested that SINNOTT submit another communication memo regarding the same event but to change the location to reflect the Police Department.

71.     SKRABACZ stated that he had lost the original copy SINNOTT submitted to him.

72.     On May 15, 2018, SINNOTT submitted another memo, identical to his previous memo without making the recommended change of location.

73.     SKRABACZ attempted to have SINNOTT falsify the facts of the event so that he could generate a disciplinary action against SINNOTT.

74.     SINNOTT's refusal to falsify the location of his squad car during the above incident, at SKRABACZ's behest, resulted in a disciplinary action which BOYLE used to terminate SINNOTT's employment.

75.     CICERO did not conduct a proper investigation, nor provide SINNOTT with an interview, nor progressive discipline as outlined in the CICERO Employee Handbook, CICERO Rules and Regulations of Board of Police, Fire and Public Safety, nor the Collective Bargaining Agreement.

76.     That on August 28, 2018, Plaintiff filed charges with the Illinois Department of Human Resources ("IDHR") for the racial discrimination he was being subjected to at CICERO (see Exhibit A).

77.     That while in field training and on probation, SINNOTT was subjected to a productivity system, also known as a matrix system ("Matrix").

78.     SINNOTT was always within the standard related to the Matrix as described in the Cicero Police Department's General Orders.

79.     That the Matrix was used to track activity that was assigned a points value per section or action taken such as Calls For Service, IVC Misdemeanor Arrests/ Warrant Packet, MISD Arrests- (non-IVC), Felony Arrests, Quasi Arrests, Warrant Arrests (All/ regardless of classification), Y Citations, AO Tickets, Street Stops w/ Field Contact Cards of P.S.C., Recovered Guns, Reports- GRF/ Supplemental/ CRASH, Parking Citations, Details/ Maj. Inc Scene- #of 1 hr. segments, Vehicle Impounds and Walk & Talks/ Business Checks.

80.     That the Matrix was also used to create means of discipline.

81.     That during evaluations, SKRABACZ and FLORES would make comments to SINNOTT such as "your numbers aren't high enough" and "Be careful you won't make it."

82.     That these comments and statements were referencing discipline and being placed on a probationary system regarding productivity due to the Matrix.

83.   That upon information and belief, this probation was issued mainly to African American employees including Officer Paul Laslie, Officer Amilcar, and SINNOTT as a method of harassment.

84.   That there were multiple occasions when SINNOTT was approached by non-African American supervisors including POLK, FLORES, BOYLE and SKRABACZ whereby they threatened discipline as a result of the Matrix.

85.   That on January 12, 2018, ROWE called SINNOTT and stated to him, "Young man, make sure you watch yourself around here. They don't like you and feel you are a threat. The history and culture of this place is not pro us. Boyle has Commander Polk watching you along with Scribbles (SKRABACZ). He tried to write you up for your hair claiming he doesn't have your papers."

86.   That upon information and belief, SINNOTT'S paperwork would continuously be misplaced by command staff which included SKRABACZ, POLK, FLORES and BOYLE.

87.   That SINNOTT submitted approximately eight copies of his medical documents during his period of employment.

88.   In July of 2017, SINNOTT was approached by SKRABACZ regarding a Town of Cicero Voters Alliance golf outing ticket.

89.   SKRABACZ stated that SINNOTT should purchase the ticket because he is on probation and the odd man out meaning he is African American.

90.   SINNOTT refused the purchase as the activity violated his moral standards which he believed included drinking, smoking and patronizing female escorts.

91.   SINNOTT was the only officer from the group of probationary employees all being Caucasian and Hispanic that did not purchase a ticket.

11

92.     SINNOTT'S name was then later discovered on a list located on the Sergeant's desk area in patrol around early August of 2017 noting all personnel that did not purchase golf outing tickets.

93.     The list also named ROWE's and Officer Kelley's, both African Americans, and Lenni Rizzi's ("RIZZI"), Caucasian).

94.     RIZZI is not associated with the command staff nor political bodies within the Town of Cicero and, upon information and belief, openly speaks out against the inequities displayed in the department.

95.     On or about March of 2018, POLK approached SINNOTT in an aggressive demeanor, stopping very close to SINNOTT's face and speaking with a raised voice regarding a court case stemming from SINNOTT's previous employment with the Harvey Police Department, Carlos Fisher v. Det. Ostrowski (search warrant 8715B-12).

96.     Gregory E. Kulis and Assoc. Ltd. ("KULIS") contacted CICERO regarding a court case Fisher v. Ostrowski (search warrant 8715B-12).

97.     SINNOTT complied with the court proceedings and provided CICERO with documents related to the case.

98.     The case file contained all completed reports, supplemental reports, inventory documents and a daily assignment card (day off) for the day of work related to the incident.

99.     SINNOTT further explained to POLK and BOYLE multiple times that there was a mistake made and SINNOTT was not present for the incident nor at work that day.

100.    The daily assignment card clearly depicted the staff for the day. POLK accepted the paperwork from SINNOTT near the employee entrance of the Cicero Police Department while walking into the roll call room (recorder area).

101.    Later, in April of 2018, approximately April 24, 2018, BOYLE approached and ordered SINNOTT to comply with the court proceedings.

102.    As SINNOTT attempted to explain the situation and provide another copy of the documents, BOYLE stated, "I don't want anything from you, just do as I say!" The Deputy then walked away from the area.

103.    The command staff including POLK and BOYLE continued to pursue disciplinary action against SINNOTT.

104.    BOYLE blatantly disregarded facts in order to create a discipline opportunity and openly stated he had a dislike towards SINNOTT because of his appearance and personality.

105.    BOYLE was provided with emails from Harvey's municipal Counsel, Seth J. Levin of Smith Amundsen LLC stating that SINNOTT was not named in the lawsuit and should not be held responsible for KULIS' actions.

106.    KULIS continued to contact the CICERO after SINNOTT's separation from employment.

107.    The last date of contact was June 30, 2018 when KULIS again, attempted to deliver a subpoena for James A. Sinnott to the Cicero Police Department.

108.    It was found that KULIS continued to contact CICERO regarding a court case Fisher v. Ostrowski (search warrant 8715B-12).

109.    KULIS allegedly provided false information to CICERO resulting in a one-sided disciplinary action against SINNOTT by BOYLE and POLK.

110.    Upon information and belief, KULIS created a document stating that SINNOTT would be issued a warrant for failure to comply with court proceedings.

111.    Upon information and belief, that document was sent to the CICERO after SINNOTT attempted to comply with the first subpoena that was issued from KULIS' office.

112.    That BOYLE stated, "the Town should never hire y'all."

113.    That, upon information and belief, BOYLE always had heated or tense interactions with employees of African American descent.

114.    SINNOTT was subjected to harsher work conditions and given assignments that Caucasian or Hispanic officers would not be assigned.

115.    SKRABACZ, POLK and FLORES would assign "Special Details" to SINNOTT, which would take him away from his regular duties.

116.    They would then create a discipline report stating that SINNOTT was neglecting his other duties as a result of fulfilling the assignment.

117.    These assignments would consist of directed patrol in specific areas of the town.

118.    Most of these patrols would be in segments of the Town of Cicero that were occupied by residents of African American descent (Districts 1, 2 and 4).

119.    SINNOTT would also be assigned to traffic enforcement in a specified region of the City.

120.    After completing the assignment as ordered, SINNOTT would then be counseled by shift staff including FLORES, SKRABACZ, POLK, and ROWE.

121.    The counseling would be directed towards neglecting other areas of daily productivity as a result of the assignment.

122.    SINNOTT was frequently assigned traffic enforcement on Cicero Avenue.

123.    Multiple times, SINNOTT would issue numerous citations related to a variety of traffic infractions.

14

124. Upon returning to the station, SINNOTT would be talked to and harassed regarding not having contact cards, pedestrian contact cards, business checks and arrests.

125. These actions were then included in SINNOTT's personnel file as memos created by the staff including FLORES, SKRABACZ, POLK, and ROWE and never officially presented as discipline before being added to the personnel file.

126. On May 7, 2018, ROWE texted SINNOTT to "meet me at the station."

127. ROWE stated, "I just wanted to stay out of the way and not have to deal with this."

128. He then advised SINNOTT that he was forced to follow the directives of POLK and FLORES.

129. ROWE also advised that he was a victim of the racially driven inequities within the Cicero Police Department.

130. ROWE further related that POLK advised ROWE "smile so I can see you" while driving by a traffic stop on July 6, 2004 at 0250 hours.

131. POLK was allegedly disciplined by BOYLE, but a formal investigation never came about.

132. SINNOTT was written up for reporting to the shift late.

133. SINNOTT arrived at 0045 hours after contacting ROWE.

134. SINNOTT was later advised by ROWE that he was ordered to complete a disciplinary action regarding SINNOTT's tardiness by BOYLE.

135. SINNOTT had been tardy this one time throughout his employment with CICERO.

136. This discipline was not equally enforced as multiple Caucasian and Hispanic officers reported for duty after their scheduled time and were never disciplined.

15

137.    On May 13, 2018, for example, Officer Ramos ("RAMOS"), Hispanic, reported for the shift late.

138.    After calling RAMOS' cellular phone multiple times, he was finally contacted and stated he had overslept.

139.    RAMOS was never disciplined for arriving late.

140.    RAMOS arrived approximately an hour and a half late for his assigned shift (0015 hours).

141.    African American employees were held to a higher standard during uniform inspections.

142.    African American employees were scrutinized because of having legitimate shave profiles during inspection.

143.    Officers of Hispanic and Caucasian descent were not questioned nor harassed about their beards, appearance or status of their profiles.

144.    Multiple Hispanic employees had beards while employed by the Cicero Police Department including, without limitation, Officer Alba and Officer Esparza.

145.    That upon information and belief, the discipline was recommended by BOYLE.

146.    Frequently, upon information and belief, SKRABACZ reported for duty and remained on duty while intoxicated.

147.    For example, SKRABACZ was observed on duty while intoxicated on the following dates:  April 27, 2018, May 9, 2018, May 7, 2018, May 15, 2018, and May 15, 2018, and was not fit to work.

148.     On June 11, 2018, at approximately 2315 hours, BOYLE, along with POLK, provided a letter stating that SINNOTT's employment was terminated, without legitimate cause or reason.

149.     After BOYLE turned over the letter at approximately 2320 hours in the conference room located on the second floor of the police facility, BOYLE stated "Blacks don't fit our police culture here."

150.     After the comment was made by BOYLE, BOYLE and POLK both had smirks on their face as SINNOTT exited the room to avoid any further conflict.

151.     That on June 11, 2018, Plaintiff's employment as a police officer with CICERO was terminated without legitimate cause or reason.

152.     SINNOTT'S termination was pretextual and in retaliation for SINNOTT'S opposition to CICERO'S actions described above.

## COUNT I
## Title VII Race Discrimination

153.     Plaintiff restates and realleges paragraphs 1-152 as if specifically set forth herein.

154.     42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of race.

155.     Defendant violated 42 U.S.C. § 2000e-2(a) by treating SINNOTT differently than similarly-situated Caucasian and Hispanic employees because of his race.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Find that CICERO discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964;
B.     Award compensatory and punitive damages to the maximum amount provided by statute;
C.     Award all back pay lost since the date of termination plus pre-judgment interest;
D.     Award attorney's fees, expert witness fees, and costs as provided by law;
E.     Award forward pay due to decrease in earnings;

F.      Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.      Grant such additional relief as this Court deems just and proper.

## COUNT II
### Title VII Race Harassment – Hostile Work Environment

156.    Plaintiff restates and realleges paragraphs 1-155 as if specifically set forth herein.

157.    42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of race and affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

158.    SINNOTT belongs to a protected group.

159.    SINNOTT was repeatedly subjected to unwanted harassment based on his race as set forth above.

160.    CICERO knew and/or should have known of the harassment and failed to take prompt remedial action.

161.    At all times hereto, SINNOTT acted reasonably under the circumstances.

162.    CICERO is liable for the racial harassment due to a hostile work environment inflicted upon SINNOTT due to CICERO'S violation of Title VII of the Civil Rights Act of 1964 as set forth above.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Find that CICERO discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964;

B.      Award compensatory and punitive damages to the maximum amount provided by statute;

C.      Award all back pay lost since the date of termination plus pre-judgment interest;

D.      Award attorney's fees, expert witness fees, and costs as provided by law;

E.      Award forward pay due to decrease in earnings;

F.      Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.      Grant such additional relief as this Court deems just and proper.

## COUNT III
## TITLE VII Retaliation

163.    Plaintiff restates and realleges paragraphs 1-162 as if specifically set forth herein.

164.    42 U.S.C. § 2000e-3(a) makes it unlawful for an employer to discriminate against an employee because he opposes any practice which is unlawful under Title VII.

165.    SINNOTT'S opposition to CICERO'S actions described above, is protected under 42 U.S.C. § 2000e-3(a).

166.    CICERO terminated SINNOTT'S employment in retaliation for his protected conduct.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.    Find that Defendant CICERO discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964 and 29 C.F.R. § 1604.11(a);

B.    Award compensatory and punitive damages to the maximum amount provided by statute;

C.    Award all back pay lost since the date of termination plus pre-judgment interest;

D.    Award attorney's fees, expert witness fees, and costs as provided by law;

E.    Award forward pay due to decrease in lower earnings;

F.    Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.    Grant such additional relief as this Court deems just and proper.

## COUNT IV
## Violation Of Illinois General Assembly Public Act 100-1001

167.    Plaintiff restates and realleges paragraphs 1-166 as if specifically set forth herein.

168.    Under 65 ILCS 5/11-1-12, in pertinent part, a municipality may not require a police to issue a specific number of citations within a designated period of time. . . a municipality may not, for the purposes of evaluating a police officer's job performance, compare the number of citations issued by the police officer to the number of citations issued by any other police officer with similar job duties.

169.    CICERO violated Illinois General Assembly Public Act 100-1001 under 65 ILCS 5/11-1-12 by utilizing a point system in order to compare the performance of officers whereby officers were forced to average a 3.0 point performance on a daily basis and monthly basis which was based on activities of the officers that includes, without limitations, moving violations, parking tickets, reports, arrests, gun seizures, and vehicle tows.

170.    CICERO utilized a point system against SINNOTT in order to compare his performance to other officers in violation of Illinois General Assembly Public Act 100-1001 under 65 ILCS 5/11-1-12.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.    Find that Defendant discriminated against Plaintiff, in violation of Illinois General Assembly Public Act 100-1001 ;
B.    Award compensatory and punitive damages to the maximum amount provided by statute;
C.    Award attorney's fees, expert witness fees, and costs provided by law;
D.    Award forward pay due to the decrease in lower earnings;
E.    Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and
F.    Grant such additional relief as this Court deems just and proper.

**COUNT V**
**VIOLATION OF 1983-EQUAL PROTECTION (RACE DISCRIMINATION)**
**(Against The Town of Cicero, Chlada, individually, Boyle, individually, Polk, individually, Flores, individually, Skrabacz, individually, and Acevez, individually)**

171.    Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-170 of this Complaint and in his charge of discrimination (Ex. A) as and for this paragraph.

172.    Plaintiff was at all times a member of a protected class based upon his Race (African American).

173.    At all relevant times Cicero had a custom, policy and/or practice to allow employees and supervisors to discriminate against African American employees.

174.    Defendants and other employees discriminated against and harassed Plaintiff and/or allowed it to occur due to his Race.

175.    During the course of his employment with the Cicero Police Department, Plaintiff has been forced to endure a working environment hostile toward African Americans.

176.    During the course of his employment, Defendants discriminated against and harassed Plaintiff and similarly situated African American employees and subjected them to a hostile workplace environment, including but not limited to the ways described elsewhere in this Complaint and in Plaintiff's attached EEOC Charge.

177.    The conduct which Plaintiff experienced was offensive and unwanted.

178.    The discrimination and harassment about which Plaintiff complained was severe and pervasive.

179.    Plaintiff complained about the widespread discriminatory and harassing conduct he faced at the Cicero Police Department.

180.    Defendants by and through its supervisors, human resources department and Town Attorney, acquiesced, turned a blind eye, and did not effectively deter, investigate, prevent or take appropriate remedial action regarding the ongoing discrimination and harassment.

181.    During Plaintiff's employment, Plaintiff met all of his employer's reasonable and legitimate work-related expectations.

182.    All of the foregoing conduct on the part of Defendants was offensive to Plaintiff and would be offensive to any reasonable person.

183.    Plaintiff complained to his supervisors, but Plaintiff's complaints went unanswered.

184. The discriminatory and harassing behavior directed at Plaintiff was part of a custom, pattern and practice of unlawful harassment and discrimination against African American employees at Cicero Police Department.

185. Defendants' conduct violated Plaintiff's right to Equal Protection under the law, guaranteed by the Fourteenth Amendment to the Constitution of the United States.

186. As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

187. Plaintiff has suffered damages of an on-going and continuous nature.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Find that Defendant discriminated against Plaintiff, in violation of 1983 Equal Protection (Race Discrimination);

B. Award compensatory and punitive damages to the maximum amount provided by statute;

C. Award attorney's fees, expert witness fees, and costs provided by law;

D. Award forward pay due to the decrease in lower earnings;

E. Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

F. Grant such additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ Marc P. Trent_____
One of Plaintiff's Attorneys

Douglas P. Trent (ARDC #2855070)
Marc P. Trent (ARDC #6324928)
TRENT LAW FIRM, P.C.
350 S. Schmale Road, Suite 130
Carol Stream, IL 60188
P: (630) 682-3100
F: (630) 682-3554
attorneys@trentlawfirm.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 2019 CR 3121  440-2019-02462 |

190314005

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Mr. Anthony J Sinnott | (708) 768-1960 | 1984 |

| Street Address | City, State and ZIP Code |
|---|---|
| 14808 Edbrooke Ave, DOLTON, IL 60419 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| CICERO POLICE DEPARTMENT | 15 - 100 | (708) 656-3600 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4901 W. Cermak, CICERO, IL 60804 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 02-25-2019   Latest: 02-25-2019
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent on or about January 1, 2017. My most recent position was Police Officer. During my employment, I was subjected to different terms and conditions of employment, including, but not limited to, harsher scrutiny. I was also harassed. On or about June 11, 2018, I was discharged.

I believe I have been discriminated against because of my race, Black, and in retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Digitally signed by Anthony Sinnott on 02-25-2019 12:28 PM EST | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT
A

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Anthony J. Sinnott<br>14808 Edbrooke Ave<br>Dolton, IL 60419 | RECEIVED EEOC<br>DEC 31 2019<br>CHICAGO DISTRICT OFFICE | From: Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2019-02462 | Daniel Acosta,<br>Investigator | (312) 872-9667 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

_____          12/20/19
Julianne Bowman,                    (Date Mailed)
District Director

cc: **Cicero Police Department**
c/o Julie E. Diemer, Esq.
Del Galdo Law Group, LLC
Berwyn, Illinois 60402

**EXHIBIT**

B