IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY SINNOTT, | ) |
| *Plaintiff*, | ) No. 20 C 1917 |
| v. | ) Judge Virginia M. Kendall |
| THE TOWN OF CICERO, et al., | ) |
| *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony Sinnott, a former probationary police officer in the Town of Cicero, has filed a Second Amended Complaint (the "SAC") alleging claims against the Town under 42 U.S.C. § 2000e et seq. ("Title VII") for Race Discrimination, Harassment, and Retaliation; a claim under 65 ILCS 5/11-1-12 related to the Town's measurement of police productivity; and a claim under 42 U.S.C. § 1983 for race discrimination against the Town and Individual Defendants Jerry Chlada, Vincent Acevez, Thomas Boyle, Larry Polk, Rudolfo Flores, and Michael Skrabacz. The Town and the Individual Defendants have moved to partially dismiss the SAC, arguing that individuals cannot be named in a Title VII cause of action, 65 ILCS 5/11-1-12 does not allow a private cause of action, Sinnott has failed to sufficiently allege the Individual Defendant's personal involvement in his § 1983 claims, and the Town moves to strike punitive damages under Title VII and § 1983. For the following reasons, the Defendants' Motions to Dismiss (Dkts. 40, 53) are granted in part and denied in part.

1

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The following factual allegations are taken from Sinnott's Second Amended Complaint and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiff Anthony Sinnott is an African American man who began his police career when he was hired by the Harvey Police Department in 2008, working there for 9 years and obtaining the civil service rank of Sergeant. (Dkt. 35-1 ¶¶ 1, 12–13). Sinnott was one of the youngest patrol officers in the history of Harvey Police Department to earn the rank of Sergeant and received numerous awards for his service. (*Id.* ¶¶ 14–16). On January 1, 2017, Sinnott left the Harvey Police Department to work for the Town of Cicero Police Department. (*Id.* ¶¶ 18–19). Sinnott believes he was the only African American man to be hired by the Cicero Police Department since 2014 and that no other African American men have been hired subsequently. (*Id.* ¶¶ 20 – 21).

Cicero's Police Department (hereinafter "Cicero PD") is comprised primarily of Caucasian men. (*Id.* ¶ 23). Thomas Boyle, a Caucasian man, is the Deputy Superintendent for Cicero PD. (*Id.* ¶ 24). Lawrence Polk, a Caucasian man, is the Commander for Cicero PD. (*Id.* ¶ 25). Rodolfo Flores, a Hispanic male, is a Captain for Cicero PD. (*Id.* ¶ 26). Michael Skrabacz, a Caucasian man, is a Sergeant for Cicero PD. (*Id.* ¶ 27). Vincent Acevez, a Caucasian man, was a Commander who was then promoted to Deputy Superintendent of Patrol. (*Id.* ¶ 28). Sergeant Rowe, an African American man, not fully named in the Complaint, is a Sergeant for Cicero PD. (*Id.* ¶ 29).

Sinnott claims that he was subjected to unequal treatment during his tenure with Cicero PD. For example, Sinnott was assigned a defective radio and battery that did not function properly by Flores, while other non-African American officers received properly functioning equipment. (*Id.* ¶¶ 30–41). As a result of this defective equipment, Sinnott had to constantly check his radio signal to make sure that his two-way radio was functioning property. (*Id.* ¶¶ 33–39). Sinnott informed Skrabacz during his first phase of field training, but he was written up on April 27, 2018 as a result of being issued defective equipment. (*Id.* ¶¶ 36, 40).

Additionally, Sinnott was forced to shave his face with a razor after advising Cicero PD that he could not because of a skin condition that primarily affects men of African descent. (*Id.* ¶¶ 42–48). Skrabacz and Flores constantly requested Sinnott shave his face after he submitted a prescription from his dermatologist and appropriate paperwork. (*Id.* ¶ 53). Sinnott also faced scrutiny for his skin color and texture. In December 2017, Polk made comments to Sinnott regarding his skin being dark and bumpy. (*Id.* ¶ 50). Polk later compared "the African American officer's"[1] skin tone to the color and texture of a brown paper bag during roll call in early winter 2018. (*Id.* ¶ 51). Sergeant Rowe, a third-party, was present and complained to the administration, including Flores and Boyle, about these comments but no disciplinary action was taken against Polk. (*Id.* ¶ 52).

After Sinnott notified the Cicero PD of his skin condition, Sinnott was assigned to vehicles that were not mechanically safe to drive and had faulty electronics. (*Id.* ¶¶ 54–59). Sinnott was written up because of this defective equipment. (*Id.* ¶ 60). Skrabacz accused Sinnott of tampering with the vehicle's GPS system, which is protected by multiple administrative passwords, although Sinnott has no knowledge of the inner workings of the system. (*Id.* ¶¶ 63–64). Boyle stated that

---

[1] It is unclear from the SAC if Polk was talking about Sinnott's skin tone or another officer's skin tone.

Sinnott's vehicle was properly serviced and functioning as it should; Boyle and Polk then falsely accused Sinnott of damaging a vehicle but did not complete a proper investigation. (*Id.* ¶¶ 65–66).

On May 9, 2018, Sinnott was ordered to submit a communication memo regarding the incident. (*Id.* ¶ 68). Sinnott advised of the stated information and gave his location of 1500 S. 54th Ave., Cicero, IL 60804. (*Id.* ¶ 69). On May 10, 2018, Skrabacz approached Sinnott to request he change his location in the memo to correspond to the Cicero PD's location and claimed he lost Sinnott's original memo. (*Id.* ¶¶ 70–71). On May 15, 2018, Sinnott submitted an identical memo to his original memo, without making the recommended change of location. (*Id.* ¶ 72). Sinnott believes Skrabacz requested Sinnott change his location so that he could generate a disciplinary action against Sinnott. (*Id.* ¶ 73). In any event, Sinnott's alleged refusal to falsify the location of his squad car resulted in a disciplinary action which Boyle used to terminate Sinnott's employment. (*Id.* ¶ 74). Cicero PD did not conduct a proper investigation nor follow the employee guidelines in terminating Sinnott. (*Id.* ¶ 75).

Sinnott also claims that he was also targeted using Cicero PD's productivity tracking system, known as the "Matrix System," while he was in field training and on probation. (*Id.* ¶¶ 77–79). Sinnott claims that he was always within the standard for the Matrix, but that during evaluations Skrabacz and Flores would make disparaging comments to Sinnott telling him that his numbers weren't high enough and that he should "Be careful you won't make it." (*Id.* ¶¶ 78, 81–82). Polk, Flores, Boyle and Skrabacz threatened discipline as a result of the Matrix. (*Id.* ¶ 84). Sinnott believes that probation stemming from use of the Matrix was mainly used to target African American employees. (*Id.* ¶ 83). On January 12, 2018, Sergeant Rowe, who is also African American, called Sinnott to tell him "Young man, make sure you watch yourself around here.

They don't like you and feel you are a threat. The history and culture of this place is not for us. Boyle has Commander Polk watching you along with [Scrabacz]. He tried to write you up for your hair claiming he doesn't have your papers." (*Id.* ¶ 85).

Sinnott also alleges that on or around March 2018, Polk approached Sinnott about a court case stemming from Sinnott's previous employment with the Harvey Police Department. (*Id.* ¶ 95). Sinnott claims he explained to Polk and Boyle multiple times that there was a mistake made and Sinnott was not present for the incident nor at work on the day the events of the court case arose. (*Id.* ¶ 99). Around April 24, 2018, Boyle ordered Sinnott to comply with the court proceedings and did not listen to Sinnott when he tried to explain the situation and provide documents. (*Id.* ¶¶ 101–02). The command staff including Polk and Boyle continued to pursue disciplinary action against Sinnott, although Harvey's municipal counsel provided Boyle with documents stating that Sinnott was not named in the lawsuit. (*Id.* ¶ 105). An attorney, Gregory E. Kulis, whose involvement in Harvey court case is not explained, contacted the Cicero PD regarding the court case and allegedly provided false information. (*Id.* ¶¶ 96, 105–10). Kulis's false information, apparently including a document stating that Sinnott would be issued a warrant for failure to comply with court proceedings, resulted in a one-sided disciplinary action against Sinnott by Boyle and Polk. (*Id.* ¶¶ 109–10).

Other discriminatory conduct included Sinnott's paperwork being continually misplaced by command staff including Skrabacz, Polk, Flores, and Boyle. (*Id.* ¶ 85–87). Sinnott also alleges that he was singled out for his race when he did not purchase tickets for a Town of Cicero Voters Alliance golf outing. (*Id.* ¶¶ 88–94). Boyle stated that "the Town should never hire y'all," meaning African Americans, and allegedly always had heated or tense interactions with African American employees. (*Id.* ¶¶ 112–13). Sinnott was subjected to harsher work conditions, given

5

different assignments than non-Black employees, and was assigned "Special Details" by Skrabacz, Polk, and Flores that would take him away from his regular duties. (*Id.* ¶¶ 114–125). Sinnott would then be penalized for this work. (*Id.* ¶¶ 120–21, 25). Sinnott was also written up for reporting late although other non-Black employees who arrived late were not disciplined. (*Id.* ¶¶ 132–40). African American employees were held to a higher standard during uniform inspections than non-Black employees. (*Id.* ¶¶ 141–44).

On June 11, 2018, Boyle and Polk provided a letter stating that Sinnott's employment was terminated, without legitimate cause or reason. (*Id.* ¶ 148). After Boyle turned over the letter to Sinnott, Boyle stated that "Blacks don't fit our police culture here," and Boyle and Polk both smirked. (*Id.* ¶¶ 149–50). Sinnott's termination was pretextual and in retaliation for Sinnott's opposition to Cicero PD's actions. (*Id.* ¶ 152). On August 28, 2018, Sinnott filed charges with the Illinois Department of Human Resources for the racial discrimination he faced at Cicero PD. (*Id.* ¶ 76).

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at

6

678). This means that the plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir.2010)).

## DISCUSSION

I. **Title VII Claims**

Defendants Chlada, Acevez, Boyle, Polk, Flores and Skrabacz move to dismiss Sinnott's Title VII claims (Counts I–III) against them asserting that individual defendants cannot be named in a Title VII suit. It does not appear from the face of the Complaint that Sinnott brings his Title VII claims against the Individual Defendants as Sinnott only seeks relief from the Town of Cicero. Sinnott does not respond to Defendants' arguments. In any event, it is well-settled that "Title VII authorizes suit only against the employer. Individual people who are agents of the employer cannot be sued as employers under Title VII." *Passananti v. Cook Cty.*, 689 F.3d 655, 662 n.4 (7th Cir. 2012); *see also Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of employer...."); *Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir.2001) ("[S]upervisors are not liable in their individual capacities under Title VII." To the extent that Sinnott wishes to bring Title VII claims against the Individual Defendants, these claims are dismissed with prejudice.

II. **Claim Under 65 ILCS 5/11-1-12**

A. **Private Right of Action**

Sinnott seeks to bring a claim against the Town of Cicero[2] under 65 ILCS 5/11-1-12 which prohibits police quotas. The statute states:

> A municipality may not require a police officer to issue a specific number of citations within a designated period of time....A municipality may not, for purposes

---

[2] Defendants include arguments that Sinnott cannot bring claims under 65 ILCS 5/11-1-12 against the Individual Defendants. Sinnott does not include the Individual Defendants in this Count and only includes allegations against the Town of Cicero. Therefore, the Court will only address the claim as against the Town.

> of evaluating a police officer's job performance, compare the number of citations issued by the police officer to the number of citations issued by any other police officer who has similar job duties.

*Id.* Defendants argue that this statute does not allow a private right of action. The factors for determining whether a private right of action is appropriate include: "(1) the plaintiff is a member of the class for whose benefit the statue was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117 (Ill. 1999).

Case law is sparse on whether 65 ILCS 5/11-1-12 provides for a private right of action. However, the Illinois Supreme Court recently granted summary judgment to a police union that brought a declaratory judgment action against the Sparta, Illinois police department's quota system. *See Policemen's Benevolent Labor Committee v. City of Sparta*, No. 125508, 2020 WL 6788755, *1 (Ill. Nov. 19, 2020). The Illinois Supreme Court did not directly address whether a private right of action is allowed, but the fact that they allowed the claim by the Union to proceed suggests that there is a private cause of action.

In *Policemen*, the Union brought a claim against the City of Sparta police department's quota system, arguing it violated ILCS 5/11-1-12. Here, Sinnott seeks to bring a similar claim on his individual behalf. Aside from the number of officers bringing the claim and the fact that Sinnott seeks damages, the injury is the same: the alleged use of a police officer quota system by a municipality. The fact that the Union sought declaratory relief and not damages does not matter to the private right of action analysis. Declaratory relief "presupposes the existence of a judicially remediable right" and thus cannot be pursued without a predicate right of action. *Alarm Detection*

*System, Inc. v. Orland Fire Protection District*, 929 F.3d 865, 871 n.2 (7th Cir. 2019) (citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). The Court declines to dismiss this claim for lack of private right of action.

### B. Statute of Limitations

The Town of Cicero argues that even if the statute provides a private right of action, Plaintiff's claim is barred by the statute of limitations. The statute of limitations is an affirmative defense, and "'complaints need not anticipate and attempt to plead around defenses.'" *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)). While Sinnott is not required to anticipate and defeat affirmative defenses such as a statute of limitations in his Complaint, if the "complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Cor*p., 665 F.3d 930, 935 (7th Cir. 2012). If, however, there is "any set of facts that if proven would establish a defense to the statute of limitations," then the motion to dismiss should be denied. *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003).

Section 8-101(a) of the Illinois Local Governmental and Government Employees Tort Immunity Act provides that no "civil action" can be brought against a unit of government more than one year after its occurrence. 745 ILCS 10/8- 101(a). Section 8-101(c) defines a "civil action" as: "any action, whether based upon the common law or statutes or Constitution of this State."

Here, Plaintiff identifies June 11, 2018 as his employment termination date by the Town due in part to his failure to meet the quotas. (Dkt. 35-1 ¶ 148). This is the last possible date that his injury under this statute could have arose. However, his first Complaint was filed on March

9

21, 2020. (*See* Dkt. No. 1). On the face of the Second Amended Complaint, Plaintiff's claim is barred by the statute of limitations. Plaintiff does not put forth any argument that his claim is not time-barred and only argues that the Tort Immunity Act does not apply because the statute is applicable only to cases involving personal injuries and/or death. Both the plain language of the statute and case law rebut this assertion. *See e.g. Anderson v. Allen*, 1:19-cv-02311, 2020 WL 5891406, *5 (N.D. Ill. Oct. 5, 2020) (finding Tort Immunity Act barred Illinois statutory claims brought outside one-year limit because claims were "civil actions based on the Illinois statutes or constitution;" *Smith v. Village of Broadview*, 19-cv-5319, 2020 WL 3050768, *10 (N.D. Ill. June 8, 2020) (same); *Blocker v. City of Chicago*, 17 CV 00055, 2017 WL 3278323, *4 (N.D. Ill. Aug. 2, 2017). The Court dismisses with prejudice Count V as Plaintiff has pled himself out of court and there is no feasible way for him to replead this claim within the statute of limitations. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts ... have broad discretion to deny leave to amend ... where the amendment would be futile.").

### III. Section 1983 Claims

Sinnott alleges that the Town of Cicero and Defendants Chlada, Boyle, Polk, Flores, Skrabacz, and Acevez violated his right to equal protection under 42 U.S.C. § 1983 by discriminating against him on the basis of race. To state a § 1983 claim, a plaintiff must allege that he was deprived of a federal right, privilege, or immunity by a person acting under color of state law. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). There is no dispute that Sinnott's case has been brought against persons acting under color of state law. What the Individual Defendants dispute is that they were personally involved in the alleged discriminatory conduct. "Section 1983 liability is premised on the wrongdoer's personal responsibility." *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012). This means that a plaintiff must allege how each defendant "caused or participated in the alleged deprivation of the plaintiff's constitutional rights." *Levin v. Madigan*, 692 F.3d 607,

621 (7th Cir. 2012); see also *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

Sinnott has not alleged sufficient personal involvement of Chlada and Acevez. The only mention of Chlada, the Superintendent of Police, is in the caption and in the opening paragraph of the Second Amended Complaint where Plaintiff lists the various defendants. There are no allegations that he was otherwise involved in the racial discrimination of Sinnott. As to Acevez, he is only mentioned in the caption, the opening paragraph, and in one paragraph, which describes, "Commander Vincent Acevez, Caucasian, was a Commander who was then promoted Deputy Superintendent of Patrol." (Dkt. 35-1 ¶ 28). There are otherwise no allegations that Chlada or Acevez took part or had even some personal involvement in the discrimination. This does not suffice as is well-established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015)).[3]

However, dismissal is denied as to the remaining Individual Defendants. Polk, Boyle, Flores, and Skrabacz list almost every allegation that pertains to them in their Motion to Dismiss, but then state, in conclusory fashion and without support, that despite these copious allegations, Sinnott has not alleged their personal involvement. For example, as described by the Individual Defendants in their Motion, Sinnott alleges that Polk made derogatory comments about Sinnott's skin texture and tone, (Dkt. 35-1 ¶ 50–51); was loud and aggressive against Plaintiff in a discussion about his Harvey police case, (*Id.* ¶ 99); pursued retaliatory disciplinary action against Plaintiff,

---

[3] Chlada and Acevez request this Court dismiss with prejudice. While this is Plaintiff's Second Amended Complaint, this is the first time the Court has reviewed his Complaint for the purposes of a motion to dismiss. Therefore, the Court will give Sinnott one opportunity to amend his pleadings consistent with this Opinion, if he so chooses.

(*Id.* ¶ 103); that Polk, along with Flores and Skrabacz, assigned Sinnott "Special Duties" that took him away from his other duties and then would discipline him, (*Id.* ¶¶ 114-121); and that as a result of these "Special Duties," Sinnott was subjected to harsher work conditions and given different assignments than non-Black employees, (*Id.* ¶¶ 114–115).

As to Flores and Skrabacz, in addition to the above allegations of assigning Sinnott "Special Duties," Sinnott specifically alleges that Flores provided Sinnott defective equipment that resulted in Sinnott being disciplined, (*Id.* ¶ 40); that Flores and Skrabacz repeatedly requested Sinnott shave his face, despite Sinnott providing the required paperwork multiple times, (*Id.* ¶ 53); that Flores and Skrabacz repeatedly misplaced Sinnott's paperwork, (*Id.* ¶ 86); that Flores knew of Polk's discriminatory comments on Sinnott's skin tone and color but did not discipline him, (*Id.* ¶ 52); that Skrabacz attempted to have Sinnott falsify the facts of a disciplinary report to then punish him, (*Id.* ¶¶ 68–74); and that Skrabacz made derogatory comments and singled Sinnott out on the basis of race in relation to a golf outing, (*Id.* ¶¶ 89–92).

Finally, as to Boyle, Sinnott alleges that Boyle also knew of Polk's discriminatory comments on Sinnott's skin tone and color but did not discipline him, (*Id.* ¶ 52); that Boyle and Polk falsely accused Sinnott of damaging a vehicle but did not complete a proper investigation, (*Id.* ¶¶ 65–66); that Boyle disciplined Sinnott for these false accusations of vehicle damage, (*Id.* ¶ 74); that Polk, Flores, Skrabacz and Boyle threatened discipline as a result of the Matrix, which was mainly used to target African American employees, (*Id.* ¶¶ 83–84); that Boyle had other employees watching and targeting Sinnott, (*Id.* ¶ 85); that Boyle stated that "the Town should never hire y'all" and allegedly always had heated or tense interactions with African American employees, (*Id.* ¶¶ 112–113); and that after firing Sinnott, Boyle stated that "Blacks don't fit our police culture here," and Boyle and Polk both smirked, (*Id.* ¶¶ 149–50). Boyle acknowledges these

allegations but denies making these statements. However, this is a factual dispute that is not appropriate to resolve at the motion to dismiss stage.

At this stage, the Court only looks at the well-pleaded allegations. *See Smoke Shop, LLC*, 761 F.3d at 785. The Individual Defendants have moved to dismiss only claiming that Sinnott has not alleged sufficient personal involvement in a constitutional deprivation. If these were one-off and isolated incidents, this argument would perhaps be more persuasive. However, Sinnott has clearly and repeatedly alleged that these actions were taken because of racial discrimination that Sinnott faced as an African American man. At the motion to dismiss stage, the complaint must be read as a whole. *See Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) (holding that when read as a whole, the plaintiff's complaint contained enough specific factual allegations to state a plausible claim); *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (discussing that under *Iqbal* and *Twombly*, "the complaint taken as a whole must establish a nonnegligible probability that the claim is valid"). In viewing the Second Amended Complaint as a whole, Sinnott has sufficiently alleged that Polk, Flores, Skrabacz, and Boyle were personally involved in a §1983 claim for racial discrimination. The Court declines to dismiss these Defendants.

## IV. Punitive Damages

Sinnott seeks punitive damages pursuant to Title VII and § 1983 against the Town of Cicero. However, both Title VII and § 1983 do not permit punitive damages to be brought against municipalities as they are units of local government. *See* 42 U.S.C. § 1981a(b)(1); *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1031-32 (7th Cir. 2003) (denying punitive damages against a government entity under Title VII); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 (1981) (holding that punitive damages are not recoverable under § 1983 against municipalities). Plaintiff does not respond to Defendant's argument. The Court strikes Sinnott's

13

punitive damages claims against the Town of Cicero in his Title VII claims (Counts I-III) and § 1983 claim (Count V) although the claims are proceeding otherwise against the Town.

## CONCLUSION

The Defendants' Motions to Dismiss [Dkts. 40, 53] are granted in part and denied in part. To the extent that Sinnott wishes to bring Title VII claims against the Individual Defendants, those claims are dismissed with prejudice. Plaintiff's claim under 65 ILCS 5/11-1-12 is dismissed with prejudice as it is barred by the applicable statute of limitations. Plaintiff's 42 U.S.C. § 1983 claims against Defendants Chlada and Acevez are dismissed for failure to allege sufficient personal involvement; however, the remaining § 1983 claims against Defendants Boyle, Skrabacz, Polk, and Flores are allowed to proceed. Plaintiff's requests for punitive damages under Title VII and § 1983 against the Town are stricken. Sinnott may amend his Complaint as to Defendants Chlada and Acevez consistent with this Opinion, if possible, within 21 days of its issuance.

_____
Virginia M. Kendall
United States District Judge

Date: March 16, 2021